IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL JAMES CHAVEZ,

    Plaintiff,

v.                                                                                                                         Civ. No. 14-1067 SCY

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

**THIS MATTER** is before the Court on Plaintiff Michael Chavez's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff disability insurance benefits. ECF No. 19. For the reasons discussed below, the Court will GRANT Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

### I. Background

Plaintiff is a forty-nine year old man who primarily worked throughout his adult life in a rock quarry. Plaintiff was let go from his position in 2010 due to tardiness in reporting for work. Administrative Record (AR) 72, 345. Plaintiff thereafter filed an application for disability insurance benefits alleging disability due to pain, insomnia, depression, and "psychosis." AR 164-65.

### A. Medical History

The record reveals that consultative psychologist Dr. John Owen, Ph.D. examined Plaintiff in March 2011. AR 345. Plaintiff reported chronic back pain, difficulty being around people, panic attacks, a constant feeling that people were judging or watching him, difficulty

1

sleeping, depression, and occasional suicidal ideation. AR 345-46.  Dr. Owen noted Plaintiff's history of substance abuse, including alcohol and heroin, although Plaintiff reported that he did not believe he currently had any issues with alcohol and was no longer using heroin. AR 346. Plaintiff stated that he was using methadone to treat his pain, as well as hydrocodone, ibuprofen, and cyclobenzaprine. AR 345-46.  Dr. Owen reported that Plaintiff was neatly groomed and cooperative during the examination. AR 346. Dr. Owen further reported that Plaintiff understood simple questions and instructions, his speech was clear and coherent, and that he was oriented to time, place, and person. AR 346. However, Dr. Owen reported that Plaintiff had some difficulty with recall and could not spell the word "world" backward. AR 346.  Dr. Owen stated that there were no active hallucinations/delusions or indications of abnormal thought processes. AR 346. Finally, Dr. Owen stated that it was difficult to determine Plaintiff's overall level of mental ability and he recommended that "[i]f necessary, [Plaintiff] should be given a Wechsler Adult Intelligence Scale – III (WAIS-III) in order to obtain a precise estimate of his mental ability." AR 346.

In summary, Dr. Owen found that Plaintiff had difficulties in the areas of recall, attention, and calculation. AR 346.  Dr. Owen primarily diagnosed Plaintiff with insomnia and provisionally diagnosed Plaintiff with "pain disorder due to psychological and physical conditions," as well as opioid and alcohol dependence in sustained full remission.  AR 346.  Dr. Owen concluded that Plaintiff

> can understand simple questions and instructions, but would have moderate to marked difficulty with detailed, complex communication[,]…moderate to marked difficulty dealing with stress in the workplace[,]…moderate to marked difficulty interacting with coworkers, supervisors or the public in an employment setting[,]…moderate difficulty focusing and attending to many work tasks[, and]…moderate difficulty adapting to change in the workplace.

AR 347.

Also in March 2011, Plaintiff saw Dr. Frank Hesse, M.D. for a consultative examination. Plaintiff reported that he pulled some muscles in his back and suffered from back pain during the four years preceding the examination. AR 40. Plaintiff reported that he only experienced back pain when lifting and that he does not experience any pain when he is not engaged in heavy lifting,. ECF No. 340. Plaintiff further reported difficulty sleeping and experiencing depression since becoming unemployed. AR 341. Plaintiff also reported that he could walk one to two miles, lift twenty to thirty pounds, sit for two hours, stand for an hour and bend well and climb stairs without difficulty. AR 341. Dr. Hesse found that Plaintiff had slight tenderness in the low midline of his back but no other such areas were noted. AR 342. Dr. Hesse stated that his impression was that Plaintiff suffered a mild lumbosacral sprain, mild depression, insomnia, partial edentulous (lost teeth), and had a history of heroin addiction. Dr. Hesse concluded that Plaintiff "should have maybe some x-rays and MRI of his lower back, but I believe that Plaintiff is able to work." AR 343.

Plaintiff further presented to Dr. Roland Sanchez in April 2011 with complaints of chronic lower back pain. AR 379. Dr. Sanchez ordered an x-ray which apparently showed no abnormalities. AR 354. Plaintiff continued to complain about back pain as well as sleeping difficulties in visits with Dr. Sanchez throughout 2011. AR 381-384. Dr. Sanchez diagnosed Plaintiff with arthritis and insomnia in November 2011. AR 381.

Also in April 2011, Dr. Paul Cherry, Ph.D., a nonexamining consultative psychiatrist, conducted a functional capacity assessment. AR 355. Dr. Cherry concluded that Plaintiff suffered from insomnia and a pain disorder due to psychological and physical conditions, as well as alcohol and heroin abuse in sustained full remission, and

3

further indicated that an anxiety disorder should be ruled out. AR 360-61, 363.  Dr. Cherry concluded that Plaintiff has mild restrictions in activities of daily living, no limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, and pace, and no episodes of decompensation.  AR 365. Dr. Cherry further found that Plaintiff is moderately limited in his ability to:

- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain concentration for extended periods;
- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- work in coordination with or proximity to others without being distracted by them;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- respond appropriately to changes in the work setting.

AR 369-70. Dr. Cherry concluded that "it is reasonable to suggest [that Plaintiff] is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with coworkers and supervisors and respond appropriately to changes in a routine work setting." AR 371.

4

Dr. Cherry determined that Plaintiff "retains the ability to understand, remember, and carry out simple instructions." AR 371.

Dr. Eileen Brady also conducted a functional capacity assessment. Dr. Brady concluded that Plaintiff's reports of severe pain "appear to be partially credible at best and are not consistent with the objective exam." AR 373. Relying on Dr. Hesse's findings, Dr. Brady concluded that "[b]ased on objective evidence there is no severe physical impairment." AR 373.

Plaintiff presented to First Choice in September 2011 with complaints of back pain and stomach issues. AR 401. The likely cause of Plaintiff's stomach issue was determined to be a hernia (confirmed by later testing that revealed Plaintiff, in fact, had a small abdominal hernia). AR 401, 421. A second x-ray showed mild degenerative changes of the thoracic and lumbar spine with no acute abnormalities. AR 419.

In December 2011, Plaintiff presented to First Choice and reported feeling anxious and having difficulty sleeping. AR 399. Plaintiff was diagnosed with new onset hypertension. AR 399. In subsequent visits, Plaintiff reported back pain in addition to his anxiety and sleeping difficulties. AR 398. Plaintiff reported that his anxiety was due to his attempts to wean off methadone. Dr. Vanessa Jacobsohn prescribed Plaintiff Paxil for his anxiety. AR 398. In a follow-up visit one month later, Plaintiff still reported back pain but indicated that the Paxil was helping his anxiety, despite his concerns regarding his Hepatitis C. AR 397. In March 2012, Plaintiff reported that his back was "freezing up" and that he was having shooting pains up his spine. AR 438. Plaintiff was prescribed Trazodone for his insomnia and administered a trigger point injection for his back pain. AR 438. In April 2012, Plaintiff subsequently reported that the Trazodone made him dizzy and that while the injection helped with his back pain, his back

5

continued to hurt during activity.  AR 439.  In July 2012, Plaintiff was further diagnosed with restless leg syndrome. AR 441.

Plaintiff returned to First Choice in October 2012. At this visit, Plaintiff reported continuing to experience back pain and anxiety.  AR 460. He was prescribed Flexeril for his back pain.  Plaintiff described similar complaints in monthly visits from February-May 2013. AR 455-459.

### B. Procedural History

On December 9, 2010, Mr. Chavez filed an application for disability insurance benefits, alleging a disability start date of August 1, 2010. AR 104, AR 42.  After his claim was denied on initial review and upon reconsideration, his case was set for a hearing in front of Administrative Law Judge (ALJ) Frederick Upshall.  AR 42. On April 29, 2013, the ALJ issued a written decision finding that Plaintiff suffered from degenerative disc disease, insomnia, and anxiety disorder. AR 44. He concluded, however, that Plaintiff could perform light work with the exception that he be permitted to sit or stand alternatively at will, not climb ladders, ropes, or scaffolds but occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl. AR 46. Further, the ALJ found that Plaintiff is limited to simple, unskilled work with occasional interaction with the public and coworkers and with no tandem tasks with coworkers.  AR 46. In accordance with this finding, the ALJ found that Plaintiff was not disabled.  Plaintiff appealed this decision to the Social Security Appeals Council, which denied his request for review. AR 1-4.   This appeal followed.

## II. Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance

benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not

supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III. Analysis

Plaintiff challenges the ALJ's decision on three fronts. First, Plaintiff contends that the ALJ failed to develop the record despite Dr. Owen's recommendation that, if necessary, Plaintiff

should be given an intelligence test to determine an estimate of his cognitive abilities. ECF No. 19 at 16. Second, Plaintiff contends that the ALJ's Residual Functioning Capacity (RFC) is incomplete and incorrect.  ECF No. 19 at 16. On this point, Plaintiff argues that the RFC is unsupported by the record because it fails to account for all of Plaintiff's limitations and is structurally inadequate because it did not provide a function-by-function analysis of Plaintiff's limitations.  ECF No. 19 at 16, 21.  Third, Plaintiff contends that the ALJ's hypothetical questions to the vocational expert were deficient and that the vocational expert's testimony was inconsistent with the dictionary of occupational titles. ECF No. 19 at 23. Because the Court agrees with Plaintiff that the ALJ's RFC does not adequately account for Plaintiff's moderate limitations, the Court concludes that the ALJ committed reversible error.

> The ALJ found that Plaintiff had the RFC to
>
> Perform light work as defined in 20 CFR 404.1567(b) except the claimant will be allowed to sit or stand alternatively at will. He can never climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl. In addition, the claimant is limited to simple, unskilled work. Furthermore, he can only occasionally interact with the public and coworkers, with no tandem tasks with coworkers.

AR 46. Plaintiff contends that the ALJ's RFC failed to encapsulate Dr. Owen's findings regarding Plaintiff's moderate limitations in his ability to interact with supervisors, ability to focus and attend "at many work tasks," ability to deal with workplace stress, and his ability to adapt to change in the workplace.  ECF No. 19 at 16-17. Plaintiff further contends that the RFC either failed to incorporate similar findings by Dr. Cherry or adequately explain the inconsistency between the moderate limitations Dr. Cherry noted and his narrative summary of Plaintiff's abilities.

Generally, an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing

9

basis." SSR 96-8P.  "In determining RFC, an ALJ must consider the limiting effects of all [the claimant's] impairments, even those that are not severe." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (internal quotation marks and citation omitted).  "The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all, and that moderate impairments must be addressed by the ALJ in connection with the RFC."  *Baysinger v. Astrue*, No. 11-333, 2012 WL 1044746, * 5 (D. Colo. March 28, 2012) (unpublished) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

In *Haga,* the Tenth Circuit held that the ALJ's rejection of certain moderate impairments required remand where the ALJ seemingly incorporated some of the plaintiff's moderate limitations in the RFC but failed to explain why he rejected other moderate limitations. 482 F.3d at 1208. In the present case, the ALJ afforded "great weight" to the findings of both Dr. Owen and Dr. Cherry. AR 48-49.  Dr. Owen found that Plaintiff would have moderate to marked difficulty interacting with supervisors in an employment setting. Similarly, in Section I of his Mental Residual Functioning Capacity Assessment ("MRFCA"), Dr. Cherry found that Plaintiff was moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors." AR 370.  As noted above, however, while the ALJ accounted for Plaintiff's moderate limitations in relation to his ability to interact with coworkers, the ALJ failed to mention any limitations in regard to Plaintiff's ability to interact with or accept criticism and instruction from supervisors in the RFC. AR 46.  The ALJ did not further provide explanation as to why these moderate limitations were rejected. Accordingly, the ALJ's decision failed to comport with *Haga*. *See id.* ("An ALJ is not entitled to pick and choose

through an uncontradicted medical opinion, taking only the parts that favorable to a finding of nondisability."); *see also Baysinger v. Astrue*, No. 11-cv-00333, 2012 WL 1044746, 4 (D. Colo. March 28, 2012) (stating that the "selective application" of findings without explanation was error).

Furthermore, the omitted moderate limitations are not inconsequential. As in *Haga*, the moderate limitations regarded Plaintiff's ability to interact with supervisors. *Haga*, 482 F.3d at 1208. Importantly, the ALJ could have provided a discussion as to why he rejected this moderate limitation. *See Haga*, 482 F.3d at 1208 (stating that although the ALJ could have discussed evidence that conflicted with the moderate limitations, the ALJ simply left it unexplained as to why certain moderate limitations were adopted but not others); *Baysinger*, 2012 WL 1044746 at * 5 (concluding that the ALJ's failure to discuss moderate limitations in regard to the Plaintiff's inability to work closely with supervisors was error). Conversely, the ALJ could have easily encompassed this additional moderate limitations in the RFC. *See Carver v. Colvin*, 600 Fed. Appx. 616, 617 (noting RFC's statement that Plaintiff could "interact with co-workers and supervisors, under routine supervision" where nonexamining consultative physician found moderate limitations in regard to the plaintiff's ability to accept instruction and respond appropriately to supervision). But the ALJ did neither. Accordingly, the ALJ's failure to account for Plaintiff's moderate limitations in regard to his ability to interact with supervisors while incorporating Plaintiff's moderate limitations in regard to his abilities to deal with the public and coworkers constitutes reversible error.

Although the Court has determined that ALJ's decision did not comport with *Haga*, it bears noting that the ALJ's failure to fully address Plaintiff's moderate

limitations is particularly glaring in light of the contradiction between Dr. Cherry's Section I findings and his Section III narrative of Plaintiff's abilities in his MRFCA. As noted above, Dr. Cherry found in Section I of the MFRCA that Plaintiff was moderately limited in his ability to interact and accept criticism from supervisors. However, in his Section III narrative, Dr. Cherry concluded that "it is reasonable to suggest" that Plaintiff can "interact adequately with coworkers and supervisors." AR 370-71. As explained in *Carver v. Colvin*, "if a consultant's Section III narrative…contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." 600 Fed. Appx. 616, 619 (10th Cir. 2015). In such a situation, it is imperative that the ALJ resolve such an inconsistency if the ALJ is to rely on the consultant's findings in the RFC. *See Baysinger*, 2012 WL 1044746, *6 (concluding that where the findings in the consultant's Section III narrative failed to take into account the Section I limitations, the ALJ erred in failing to discuss or explain why those limitations were not included in the RFC). In the absence of such a discussion, the ALJ's reliance on the Dr. Cherry's Section III findings cannot properly be relied on as part the substantial evidence supporting the RFC. *See id.* at *7.

IT IS THEREFORE ORDERED that Plaintiff Michael Chavez's Motion to Reverse and Remand (ECF No. 19) is GRANTED. The Social Security Commissioner's denial of Mr. Chavez's claim for disability benefits is reversed and the case is remanded for further proceedings consistent with this opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent